**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| **ROCKY CALDWELL** <br><br> Plaintiff, <br><br> vs. <br><br> **CHARLES PALMER, JASON SMITH, AND MARY BENSON** <br><br> Defendants. | **No. 12-CV-4115-DEO** <br><br> **ORDER RE:** <br> **MOTION FOR SUMMARY JUDGMENT** |

**I. INTRODUCTION**

Currently before the Court is Defendants' Motion for Summary Judgment. Docket No. 22. In his 42 U.S.C. Section 1983 Complaint, Mr. Caldwell, who is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders (CCUSO) in Cherokee, Iowa, argues that he was denied appropriate medical care by the Defendants.[1] The parties appeared for hearing on January 21, 2014. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

---

[1] The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses." Iowa Department of Human Services Offer #401-HHS-014: CCUSO, 1 http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited June 5, 2014.

## II. BACKGROUND AND FACTS

Mr. Caldwell has been a patient committed to CCUSO since February 2012. Mr. Caldwell filed this case on December 27, 2012. On January 23, 2013, the Court entered an Initial Review Order allowing Mr. Caldwell's claim to proceed and appointing Robert Tiefenthaler to represent him. Docket No. 3.

In his Amended Complaint, Mr. Caldwell alleges that he has been denied adequate medical care regarding his headaches, hemorrhoids, and heart failure.[2] The record contains extensive medical records for each issue.

During his deposition, Mr. Caldwell testified that he suffers hemorrhoids. He testified that the hemorrhoids are painful and cause rectal bleeding. To address the hemorrhoid issue, Nurse Benson prescribed Metamucil, Milk of Magnesia and prune juice to ease Mr. Caldwell's bowel movements and thus reduce hemorrhoid irritation. In April of 2013, Nurse Benson referred him to the University of Iowa Health Center. The University of Iowa Health Center performed a colonoscopy and

---

[2] As will be discussed further below, Mr. Caldwell has abandoned his claim related to heart failure.

2

found that Mr. Caldwell did suffer from moderate internal hemorrhoids. However, the University of Iowa did not recommend surgical treatment. In August of 2013, the Defendants again sent Mr. Caldwell to the University of Iowa Health Center. On a subsequent examination, the University of Iowa determined that Mr. Caldwell's anal pain was likely caused by a fissure (similar to a boil). The University of Iowa prescribed a medication to deal with the fissure and recommended that Mr. Caldwell increase his Metamucil intake to ease bowel movements.

During his deposition, Mr. Caldwell testified that he suffers from recurrent headaches or migraine headaches. Nurse Benson prescribed Mr. Caldwell Topamax, a migraine medication. He also takes Tylenol as needed.

From the medical records, it seems that Mr. Caldwell first complained of headaches on April 20, 2012, two months after arriving at CCUSO. Two weeks later, Nurse Benson prescribed Topamax to treat the headaches. On May 25, 2012, Mr. Caldwell reported to Nurse Benson that the Topamax had resolved the headache issue. In June of 2012, four months after he arrived at CCUSO, Mr. Caldwell requested that Nurse

Benson increase his dosage of Topamax. However, Nurse Benson was hesitant to increase his pain medication because of possible adverse effects on Mr. Caldwell's blood pressure. On June 20, 2012, Nurse Benson and Dr. Stephen Veit examined Mr. Caldwell.[3] They determined that some of Mr. Caldwell's headaches are caused by shoulder/neck arthritis and referred him for an examination and possible therapy at Sports Rehabilitation and Professional Therapy in Cherokee, Iowa. Mr. Caldwell treated with physical therapist Dan Hasty at Sports Rehab several times in the summer of 2012. Physical Therapist Hasty eventually discharged Mr. Caldwell after successfully completing a therapy plan. In early 2013, Mr. Caldwell renewed his complaint of a recurrent headache. On July 26, 2013, Nurse Benson referred Mr. Caldwell to the University of Iowa Health Center, who conducted an MRI scan on Mr. Caldwell's head. The MRI showed no areas of concern and that Mr. Caldwell had normal scan results. As of the hearing, Mr. Caldwell continues to use Topamax and Tylenol for headaches.

---

[3] Dr. Veit is a physician in Cherokee, Iowa, that regularly consults at CCUSO.

Mr. Caldwell has also treated for several other medical problems while at CCUSO, but did not include those issues in his Amended Complaint. For example, Mr. Caldwell has periodically complained of an underarm rash. The medical records indicate that Nurse Benson prescribed a topical steroid cream to treat the rash and instructed Mr. Caldwell to change deodorants. Mr. Caldwell also reported a crack on the heel of his foot, for which he was prescribed cortisone cream. Also during the relevant time period, Mr. Caldwell treated for a hernia. The records show that the hernia was surgically repaired in 2013.

### III.  STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See

Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007)).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

**IV. ISSUE**

In his Complaint, Mr. Caldwell alleges that he suffers from hemorrhoids, congestive heart failure, and severe headaches or migraines and that the Defendants have failed to provide him constitutionally adequate medical care. Docket No. 11. In their Motion for Summary Judgment, the Defendants argue that they were not deliberately indifferent to Mr.

7

Caldwell's medical condition(s) and that they are entitled to qualified immunity. Docket No. 22.

**V. ANALYSIS**

**A. Personally Responsible**

The first argument the Court will address is the Defendants' argument that Defendant Charles Palmer and Jason Smith are not individually responsible for the alleged violations. As stated by the Defendants:

> A Plaintiff may bring a section 1983 claim only against those individuals actually responsible for the constitutional deprivation. Doyle v. Camelot Care Centers, [Inc.], 305 F.3d 60[3], 614-615 (7th Cir. 2002); De[L][a][F]ont v. Beckelman, 264 F. Supp. [2d] 650, 656, (N.D. Ill 2003). Defendants are only liable for actions for which each is directly responsible. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). A general responsibility for supervising operations is insufficient to establish the personal involvement necessary to support liability. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). In bringing a 1983 claim a Plaintiff may not rely on the doctrine of respondeat superior, but must allege personal involvement in the wrongdoing.

Docket No. 22, Att. No. 2, p. 8-9. In this case, the parties generally agree that Charles Palmer was not involved in Mr.

Caldwell's medical care. Accordingly, he will be dismissed from the case. Additionally, Dr. Smith, Director of CCUSO, had no direct involvement in Mr. Caldwell's treatment. Accordingly, Dr. Smith will be dismissed from this case. However, as will be discussed in greater detail below, Nurse Benson was involved in Mr. Caldwell's treatment and thus is the proper Defendant in this case.

Finally, the Defendants briefly argue that officials of the state are immune from money damages. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Because the remaining Defendant is being sued in her individual capacity for her individual failures while operating under the color of state law, not in her official capacity, the Defendants' argument that she is immune from money damages is moot.

**B. Deliberate Indifference**

In his Complaint, Mr. Caldwell alleges that he has several medical issues, including headaches, hemorrhoids, and most seriously, congestive heart failure. The Defendant referred Mr. Caldwell to the University of Iowa Health Center, who evaluated him and found that he does not suffer from congestive heart failure. Accordingly, during the hearing,

9

Mr. Caldwell voluntarily abandoned his deliberate indifference claim related to congestive heart failure.

In their Motion for Summary Judgment, Docket No. 22, the Defendants argue that there is no genuine issue of material fact, because the Plaintiff has failed to allege any facts that would constitute deliberate indifference. At the outset, the Court notes that, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. In the context of inmate medical-care claims, Courts have stated that:

> [t]he Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). It thus requires that the government provide "medical care for those whom it is punishing by incarceration." Id. at 103. The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." Id. Accordingly, "deliberate indifference to serious medical needs" of a prisoner

10

> constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. Id. at 104.

Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted). This deliberate indifference standard is used routinely in prisoner cases related to medical care.

Courts also apply the deliberate indifference standard to civilly committed individuals. See Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) which applied the deliberate indifference standard to a medical-care claim raised by a patient involuntarily committed as a sexually violent predator under the 14th Amendment. See also Scott v. Benson, 742 F.3d 335, 339 (8th Cir. 2014), stating, "where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment. Senty-Haugen, 462 F.3d at 889-90."

Under the deliberate indifference standard, Mr. Caldwell must show the Defendants were deliberately indifferent to a serious illness or injury. Senty-Haugen, 462 F.3d at 889. A successful deliberate indifference claim is comprised of both an objective and a subjective element. Farmer v. Brennan, 511

U.S. 825, 834 (1994). First, Mr. Caldwell must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Second, Mr. Caldwell must establish that the defendants acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

Although negligence or inadvertence will not support a deliberate indifference claim, a plaintiff need not establish that officials actually intended harm from the failure to provide adequate care. Walker, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to [the plaintiff] and disregarded the risk." Greeno, 414 F.3d at 653. A successful plaintiff need not show that he was literally ignored in his demands for medical treatment, and a defendant's showing that a plaintiff received some

treatment does not resolve the issue conclusively if the treatment was "blatantly inappropriate." Greeno, 414 F.3d at 653–54 (internal citations and quotation omitted). Finally, the Eighth Amendment "protects [a plaintiff] not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to future health." Board v. Farnham, 394 F.3d 469, 479 (7th Cir. 2005). "Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011) (citing Lenz v. Wade, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

As stated above, to show deliberate indifference, Mr. Caldwell must first show that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." Walker, 293 F.3d at 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. Gutierrez, 111 F.3d at 1369. In his

brief, Mr. Caldwell argues that he has created a fact issue on having sufficiently serious medical need based on "collective pain and discomfort." Docket No. 29, p. 2.

Mr. Caldwell's claim and the Defendants' Motion for Summary Judgment is distinct from many recent deliberate indifference cases this Court has decided. Often, the Court is able assume that the complained of medical need is sufficiently serious. See, for example, <u>Triplett v. Benson, et al</u>, 12-CV-4063, Docket No. 27, where the Plaintiff complained that the Defendants ignored his cancer; see also <u>Scott v. Benson</u>, 11-CV-4055, Docket No. 86, where the Plaintiff complained that the Defendant ignored an infection which eventually resulted in his leg being amputated. However, Mr. Caldwell alleges that his serious medical need is the pain caused by hemorrhoids and headaches. At the outset, the Court notes that 8th Circuit has a very conservative outlook on what constitutes a serious medical need. See, for example, <u>Fourte v. Faulkner Cnty., Ark.</u>, 13-2241, 2014 WL 1193457 (8th Cir. 2014) where the 8th Circuit recently found that high blood pressure which caused a prisoner to go blind was not a serious medical need. Additionally, the Court notes

14

that in several cases cited by the Defendants, courts have found that hemorrhoids do not constitute a sufficiently serious medical need. See Docket No. 22, Att. 2, p. 7. Thus, there is a question of whether Mr. Caldwell has plead a medical need that is sufficiently serious. However, because the Court is persuaded that the second prong of the deliberate indifference standard is dispositive, the Court will assume without deciding that Mr. Caldwell suffers from sufficiently serious medical need.

Assuming that Mr. Caldwell has plead a serious medical need, Mr. Caldwell must also establish that the Defendant acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. Greeno, 414 F.3d at 653. In other words, Mr. Caldwell must show that the Defendant was aware of his serious medical need but deliberately disregarded it. See Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010). In applying the deliberate indifference standard, the 8th Circuit has stated that, "[t]he inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment. (citing Dulany v.

Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)) (holding 'inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment'). '[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.'" Nelson v. Shuffman, 603 F.3d 439, 448-49 (8th Cir. 2010) (some internal citations omitted.)

The Defendant argues that Mr. Caldwell has failed to allege facts that show Nurse Benson ignored or disregarded his medical needs. The question of whether an institutions' medical staff deliberately disregarded the needs of an inmate or a patient is a factually-intensive inquiry. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). Accordingly, the Court must review the record to determine if Mr. Caldwell has plead a genuine issue of material fact related to deliberate indifference.

In regards to hemorrhoids, the (uncontested) record reveals that as soon as Mr. Caldwell complained of hemorrhoids, Nurse Benson began treating them. He is prescribed Metamucil, Milk of Magnesia and prune juice to ease his bowel movements and reduce hemorrhoid irritation. He has been prescribed standard hemorrhoid treatments such as topical ointment and Tuck pads. Mr. Caldwell argues he would like to have his hemorrhoid surgically removed. However, Nurse Benson referred Mr. Caldwell for evaluation at University of Iowa Health Center, and the University of Iowa determined that Mr. Caldwell did not need surgery. Instead, they determined the bulk of his pain was likely caused by a non-hemorrhoid anal fissure (similar to a boil) and prescribed medicine to treat the fissure. In short, there is no evidence that Nurse Benson has ignored Mr. Caldwell's hemorrhoid issue. She has prescribed a number of different treatments for Mr. Caldwell and referred him to the University of Iowa Health Center. At most, Mr. Caldwell has alleged facts that he would prefer to have surgery. However, the University of Iowa specifically stated that was not necessary. As stated above, the 8th Circuit has repeatedly held that a claim for deliberate

17

indifference cannot succeed simply because a patient desires a different course of treatment than the one prescribed by medical professionals. In this case, both Nurse Benson and the University of Iowa have determined that Mr. Caldwell does not require surgery. The record reveals that Nurse Benson has treated Mr. Caldwell's hemorrhoids with the normal, common medicines that a hemorrhoid sufferer would receive whether or not they were a committed patient at CCUSO. Accordingly, Mr. Caldwell has failed to allege any facts that would show Nurse Benson has been deliberately indifferent to his serious medical need.

Mr. Caldwell's other claim deals with headaches. The record shows that within a few weeks of Mr. Caldwell complaining of headaches, Nurse Benson prescribed him Topamax, which is a serious migraine medication. When Mr. Caldwell's headaches returned, Nurse Benson and Dr. Veit examined him, and referred him to an outside clinic in Cherokee for treatment. When Mr. Caldwell's headaches returned again, Nurse Benson referred Mr. Caldwell to Iowa City for an MRI. The MRI came back normal and did not indicate any other course of treatment that the medical professionals could pursue.

18

However, Nurse Benson has kept Mr. Caldwell on Topamax and Tylenol to treat the pain associated with his headaches. Accordingly, there simply is no evidence that Nurse Benson has ignored or disregarded Mr. Caldwell's headache issue. Instead, the record reveals that in the two years Mr. Caldwell has been at CCUSO, Nurse Benson has repeatedly attempted to resolve Mr. Caldwell's headaches by: (1) prescribing Topamax, a migraine medication; (2) referring Mr. Caldwell to Sports Rehabilitation and Professional Therapy clinic in Cherokee; and (3) referring Mr. Caldwell to the University of Iowa Health Center for an MRI.

Because Mr. Caldwell has failed to allege a genuine issue of material fact that Nurse Benson has deliberately disregarded or ignored his headaches or his hemorrhoids, the Court must grant the Defendants' Motion for Summary Judgment.

**C. Qualified Immunity**

Defendants also argue that they are entitled to a defense of qualified immunity. However, because the Court found that Mr. Caldwell has failed to articulate a deliberate indifference claim, the Court need not reach that issue.

**VI. CONCLUSION**

For the reason set out above, the Defendants' Motion for Summary Judgment (Docket No. 22) is **GRANTED**, and Mr. Caldwell's Amended Complaint will be dismissed.

**IT IS SO ORDERED** this 9th day of June, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa